ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E. Warm Springs Rd Suite 130
Las Vegas, NV 89119
Telephone: (702) 614-0600
*Attorney for Robert E. Atkinson, Trustee*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| In re:<br><br>ABIMAEL DURAN<br>  dba SNV PROPERTIES, LLC<br>  dba AD HOMES, LLC<br>  dba CORNERSTONE HOLDINGS I, LLC<br><br>Debtor. | Case No.   24-15875-hlb<br>Chapter 7 (involuntary)<br><br>**MOTION TO SUBSTANTIVELY CONSOLIDATE TWO NON-DEBTOR ENTITIES INTO THIS BANKRUPTCY ESTATE** |
|---|---|

Chapter 7 trustee ROBERT E. ATKINSON ("**_Trustee_**") hereby moves this Court for an order substantively consolidating the following two non-debtor entities:

- SNV PROPERTIES I, LLC; and
- CORNERSTONE HOLDINGS I, LLC

(collectively, "**_SNV and Cornerstone_**") into this bankruptcy estate.

This motion is based on: the Memorandum of Points and Authorities contained herein; the accompanying Declaration of Robert E. Atkinson filed contemporaneously herewith ("**_Trustee's Decl._**"); the pleadings and papers on file in this case; and any oral arguments made at the time of hearing on this matter.

DATED:  January 21, 2025                **ATKINSON LAW ASSOCIATES LTD.**

                                    By:        /s/ Robert E. Atkinson
                                            ROBERT E. ATKINSON, ESQ.
                                            Nevada Bar No. 9958
                                            *Attorney for Trustee*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    FACTUAL and PROCEDURAL BACKGROUND**

**A.  *Involuntary Chapter 7 Bankruptcy Petition***

1. On November 6, 2024 ("***Commencement Date***"), petitioning creditors Bulmaro Cruz, Greeley Easy Home Rentals, LLC and MELDNB, LLC (the "***Petitioning Creditors***"), filed an involuntary chapter 7 bankruptcy petition against the above-captioned debtor ("***Debtor***").  [ECF #1.]

2. As noted in the involuntary petition, the Debtor's 'other names' are:

- aka/dba SNV Properties, LLC
- aka/dba AD Homes, LLC
- aka/dba Cornerstone Holdings I, LLC

[ECF #1 at PDF page 1, item #3.]

3. The Debtor did not file an opposition to the petition, and an order for relief was entered on January 2, 2025. [ECF #9.]

4. The official caption to this bankruptcy case, as shown above, includes the following notation:

> ABIMAEL DURAN
>   *dba* SNV PROPERTIES, LLC
>   *dba* AD HOMES, LLC
>   *dba* CORNERSTONE HOLDINGS I, LLC

[Trustee's Decl. at ¶ 3; *see also* case docket.]

5. Per 11 U.S.C. § 541(a), the commencement of this case created a bankruptcy estate (the "***Duran Bankruptcy Estate***").  The Trustee is the appointed chapter 7 trustee of the Duran Bankruptcy Estate.  [ECF #15.]

**B.  *SNV Properties***

6. The Trustee investigated SNV Properties, and discovered the following:

- The legal name of this entity is "**SNV Properties I, LLC**".
- Debtor is the registered agent and the sole Manager of this company.
- On belief, this company is 100% owned by Debtor.

[Trustee's Decl. at ¶ 4 (attaching a printout from the Nevada Secretary of State website).]

7. The Trustee further investigated the assets of this company, and discovered the following:

- SNV Properties I, LLC owns a 50% deed interest in a condo located at 7200 Pirates Cove Rd., Unit 2089, Las Vegas, NV 89145 [APN: 138-27-419-409].
- This property has a recorded mortgage against it. However, the mortgage is not in Cornerstone Holdings I, LLC's name.[1]
- This property has a market value of approximately $150,000, and appears to have tens of thousands of dollars of equity.

[Trustee's Decl. at ¶ 5.]

### C. Cornerstone Holdings

8. The Trustee investigated Cornerstone Holdings, and discovered the following:

- The legal name of this entity is "**Cornerstone Holdings I, LLC**".
- Debtor is the registered agent and the sole Manager of this company.
- On belief, this company is 100% owned by Debtor.

[Id. at ¶ 6 (attaching a printout from the Nevada Secretary of State website).]

9. The Trustee further investigated the assets of this company, and discovered that this company owns three parcels of real estate:

- Cornerstone Holdings I, LLC owns 100% of a house located at 3624 Berg Street, North Las Vegas, NV 89030 [APN: 139-12-210-036].
  - This property does not appear to have a recorded mortgage against it.
  - This property has a market value of approximately $315,000, all of which appears to be equity.
- Cornerstone Holdings I, LLC owns 100% of a house located at 3170 Shadow Bluff Avenue, Las Vegas, NV 89120 [APN 162-36-511-025].

---

[1] The Debtor's business model appears to be taking over distressed properties (death of an owner, etc.), such that the LLC ownership occurs without any change to the underlying deed of trust recorded many years earlier. Accordingly, SNV is not an obligor on the house loan.

- This property has a recorded mortgage against it. However, the mortgage is not in Cornerstone Holdings I, LLC's name.
- This property has a market value of approximately $500,000, and appears to have approximately one hundred thousand dollars of equity in it.

• Cornerstone Holdings I, LLC owns 50% of a condo located at 2110 Sealion Drive, Unit 206, Las Vegas, NV 89128 [APN: 138-21-613-307].

- This property has a recorded mortgage against it. However, the mortgage is not in Cornerstone Holdings I, LLC's name.
- This property has a market value of approximately $150,000, and appears to have tens of thousands of dollars of equity.

[Trustee's Decl. at ¶ 7.]

### D. AD Homes

10. The Trustee investigated AD Homes, and discovered the following:

• The legal name of this entity is "**AD Homes LLC**".
• Debtor is the registered agent and the sole Manager of this company.
• On belief, this company is 100% owned by Debtor.

[Id. at ¶ 8.]

11. The Trustee further discovered that this company is in voluntary chapter 7 bankruptcy in this District, as case no. 24-16540-hlb ("**AD Homes BK Case**"). That case was filed on December 16, 2024, as a bare-bones skeletal filing, with no schedules or statements. Abimael Duran (i.e., the Debtor) signed the petition. That business case was filed without an attorney. [Id. at ¶ 9.]

12. The Trustee further investigated the assets of this company, and discovered that this company owns at least four parcels of real estate. [Id. at ¶ 10.]

13. However, given the AD Homes BK Case, this motion is not seeking to consolidate the assets of AD Homes into Duran's bankruptcy estate. Given the difficulties of that case (no attorney for a business debtor, no schedules, no documents, no appearance at

-4-

the 341), the Trustee expects that case to eventually fail. Accordingly, the Trustee reserves the right in the future, via a separate motion, to also seek consolidation of those assets into this Duran bankruptcy estate.

14. Accordingly, this present Motion seeks to consolidate only SNV and Cornerstone into this bankruptcy estate.

### E. Debtor's Creditors Filed a Complaint in State Court Alleging that Duran Used His Affiliated Entities as Alter Egos

15. In 2024, certain creditors of Debtor, namely Jacinto Sanchez and his company NYC Development, LLC (collectively, "**_Plaintiffs_**"), filed a complaint ("**_Complaint_**") in Nevada state Eighth District Court, as case no. A-24-903170-C, against defendants Duran, Cornerstone Holdings I, LLC, and AD Homes, LLC. [Trustee's Decl. at ¶ 11.]

16. In that Complaint, the Plaintiffs sought a judgment finding that the two entities are the alter ego of Debtor, arguing that the entities and Duran are "completely insuperable [sic] from each other" and argued factors such as (i) commingling of funds between them; (ii) failure to observe corporate formalities; and (iii) a failure to differentiate between personal assets and assets of the companies. [Id. at ¶ 12.]

### F. The Involuntary Petition Also Asserts Alter Ego

17. As noted in Section A above, the involuntary petition asserts that Debtor is 'aka/dba' all three entities.

18. As noted above, Duran is the registered agent for all three companies. None of the three companies filed an opposition to their inclusion as a 'aka/dba' of Debtor. [*See generally* case docket.]

19. On information and belief, the three Petitioning Creditors dealt with Duran and the entities as a single economic unit and did not rely on their separate identity in extending credit. [Trustee's Decl. at ¶ 13.]

20. On information and belief, the affairs of the debtor are so entangled that consolidation of SNV and Cornerstone into the Duran Bankruptcy Estate will benefit all creditors. Such affairs include:

- Deeds of trust that were never signed and/or recorded;
- Representations regarding the transfer of properties that never occurred;

- Representations which were designed to stop creditors from litigating; and
- Investing loan proceeds into many different properties without the lender-creditors' knowledge or approval.

[Trustee's Decl. at ¶ 14.]

### G. No Known Creditors of SNV or Cornerstone

21. As noted above, none of the mortgages are in SNV or Cornerstone's name. The Trustee is unaware of any direct creditors of SNV or Cornerstone. [Trustee's Decl. at ¶ 15.]

## II.  LEGAL AUTHORITIES & ARGUMENT

### A. Substantive Consolidation of the Debtor with the Non-Debtor Entities Is Appropriate.

22. Bankruptcy courts are courts of equity and the power to enter substantive consolidation orders has been considered part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act of 1898. Alexander v. Compton (In re Bonham), 229 F.3d 750, 763 (9th Cir. 2000); Gill v. Sierra Pacific Constr., Inc. (In re Parkway Calabasas), 89 B.R. 832 (Bankr. C.D. Cal. 1988), aff'd, 949 F.2d 1058 (9th Cir. 1991). See also Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 219 (1941).

23. Specifically, 11 U.S.C. § 105(a) gives the Bankruptcy Court the authority to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11, which includes an order to consolidate. 11 U.S.C. § 105(a); In re Parkway Calabasas, 89 B.R. at 837; In re Bonham, 229 F.3d at 764. Substantive consolidation of two entities was first tacitly approved by the Supreme Court in Sampsell, in the context of a debtor who had abused corporate formalities and allegedly made fraudulent conveyances of the debtor shareholder's assets to the corporation. Id., citing Sampsell, 313 U.S. at 218-19.

24. The primary purpose of substantive consolidation "is to ensure the equitable treatment of all creditors." In re Bonham, 229 F.3d at 764; citing Union Savings Bank v. Augie/Restivo Baking Co. Ltd. (In re Augie/Restivo Baking Co.), 860 F.2d 515, 518. "In place of two or more debtors, each with its own estate and body of creditors, substantive consolidation substitutes a single debtor, a single estate with a common fund of assets, and a single body of creditors." In re Parkway Calabasas, 89 B.R. at 836-837; (citations omitted).

Assets and liabilities of each entity are pooled, inter-related claims are eliminated, and creditors of the separate entities become creditors of the consolidated entity. Id. at 837; In re Bonham, 229 F.3d at 764.

25. Here, loan proceeds from the known creditors appear to have been commingled and used interchangeably to purchase the properties held in SNV and Cornerstone.

26. The common fund of assets to pay these creditors are the assets of SNV and Cornerstone. In order to ensure the equitable treatment of all these creditors, the Court should exercise its equitable powers under 11 U.S.C. § 105(a) and issue an order substantively consolidating SNV and Cornerstone, and all of their assets, into the Duran Bankruptcy Estate.

### B. The Debtor's Estate Should Be Substantively Consolidated with SNV and Cornerstone Because the Ninth Circuit Test for Consolidation Is Satisfied.

27. The Ninth Circuit adopted a two-factor test to determine if substantive consolidation is appropriate:

> (1) whether creditors dealt with the consolidated entities as a single economic unit and did not rely on their separate identity in extending credit;
> **or**
> (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors.

In re Bonham, 229 F.3d at 766 (emphasis added), citing In re Augie/Restivo Baking Co., 860 F.2d at 516-17. The presence of only one of these factors provides a sufficient basis to consolidate. Id. at 767.

28. It should be noted that substantive consolidation is distinguishable from state law alter ego remedies. In re Bonham, 226 B.R. 56, 76 (Bankr. D. Alaska 1998). While the elements of the alter ego doctrine may provide grounds for substantive consolidation, the law of substantive consolidation is federal bankruptcy law and is not dependent upon state law concepts. Id. at 77. Thus, the term "alter ego" does not have to meet the definition under any state law, but instead is used loosely to indicate that a corporation is the instrumentality of the debtor used to conduct the debtor's financial affairs. See Id. at 85, 96 (citations omitted). The Bonham bankruptcy court further explained this concept as follows:

> The factors evaluated on a motion for substantive consolidation appear similar to an analysis of piercing the corporate veil. Like piercing the corporate veil, substantive consolidation ignores artificial structures legally defining the consolidated entities. Ultimately, however, such an analogy is misplaced because the corporate law doctrine of limited liability is not involved. Rather, substantive consolidation is more like the corporate law notion of enterprise liability because substantive consolidation does not seek to hold shareholders liable for the acts of their incorporated entity. [footnote omitted] Substantive consolidation more closely resembles the bankruptcy rule of subordination because competition for the consolidated assets is between creditors alone. Thus, substantive consolidation ignores artificial legal structures but looks only to the combined assets of the consolidated entities for satisfaction of all claims against the collective group. [footnotes in original omitted].
>
> In re Bonham, 226 B.R. at 77, quoting J. Stephen Gilbert, Note: Substantive Consolidation in Bankruptcy: A Primer, 43 V and L Rev 207, 218 and fn. 77-8.

29. The second Bonham factor, which examines the entanglement of the debtor's affairs, is justified where, "'the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors' or where no accurate identification and allocation of assets is possible." In re Bonham, 229 F.3d at 766, citing In re Augie/Restivo, 860 F.2d at 519.

30. Here, both factors are satisfied: (i) creditors dealt with the consolidated entities as a single economic unit and did not rely on their separate identity in extending credit; and (ii) the affairs of the debtor are so entangled that consolidation will benefit all creditors Under these circumstances, there is no prejudice to the creditors if these entities are consolidated as one. All creditor claims would still exist, and would benefit by having the same access to the proceeds from any sale of assets.

**C. The Trustee Will Properly Provide Notice and an Opportunity to Be Heard.**

31. A noticed motion is an appropriate procedure for substantive consolidation. In re Bonham, 229 F.3d at 760. Courts have ordered substantive consolidation in numerous procedural contexts. Id. at 765, n. 9. For example, a bankruptcy court may order substantive consolidation as a contested matter upon motion, as was done in In re Bonham or via an adversary proceeding or other procedural device, as long as there is notice and an opportunity to be heard. Id. (emphasis added); *see also* In re Reider, 31 F.3d at 1108; Federal Deposit

-8-

Insurance Corp. v. Colonial Realty Co., 966 F.2d 57, 58 (2d Cir. 1992); First Nat'l Bank of El Dorado v. Giller (In re Giller), 962 F.2d 796, 798 (8th Cir. 1992).

32. The Trustee is seeking this mater to be heard on shortened time. The Trustee has drafted the OST order to ensure that service of this motion occurs on Debtor and also SNV and Cornerstone, as well as the entire known creditor base (the CMM). Thus, the Trustee is complying with the requirement of due process by giving all parties notice and an opportunity to be heard.

**D. Substantive Consolidation Should be Granted Nunc Pro Tunc to the Petition Date.**

33. Substantive consolidation of the estates of debtor and the non-debtor parties may be granted *nunc pro tunc*, effective as of the petition date. In re Bonham, 229 F.3d at 760. Bankruptcy courts have authorized the substantive consolidation of two or more entities *nunc pro tunc* with avoiding power retained, in order to allow a trustee or creditors to attack fraudulent transfers or avoidable preferences made by the debtor or consolidated entities as of the date of filing of the initial bankruptcy petition. Id. at 765; *see*, e.g., First National Bank of Barnesville v. Rafoth (In re Baker & Getty Financial Srvcs., Inc.), 974 F.2d 712, 720 (6th Cir. 1992); Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp., Inc.), 810 F.2d 270, 275-77 (D.C. Cir. 1987); Kroh Brothers Development Co. v. Kroh Bros. Mgmt. Co. (In re Kroh Bros. Dev. Co.), 117 B.R. 499, 502 (W.D. Mo. 1989). Courts allow *nunc pro tunc* approval in order to benefit the creditors of the multiple estates involved, allowing a "truly equitable distribution of assets." In re Bonham, 229 F.3d at 768.

34. The Trustee requests that the Court order substantive consolidation of SNV and Cornerstone into the Duran Bankruptcy Estate, *nunc pro tunc* as of the Commencement Date. Given certain pre-bankruptcy transfers, the Trustee also requests that the nunc pro tunc relief expressly includes avoidance rights under chapter 5 of the Bankruptcy Code for transfers of property from the consolidated entities. Such relief will benefit the creditors of the Debtor and provide an equitable distribution of assets to all creditors.

///

///

///

///

### III. RELIEF REQUESTED

By this motion, the Trustee seeks entry of an order:

- Substantively consolidating SNV Properties I, LLC and Cornerstone Holdings I, LLC into the Duran Bankruptcy Estate.
- All real and personal property of both SNV Properties I, LLC and Cornerstone Holdings I, LLC shall directly be property of the Duran Bankruptcy Estate, including but not limited to all financial accounts, contractual rights, and all real property including:
  - All of SNV Properties I, LLC's rights, title, and interest in 7200 Pirates Cove Rd., Unit 2089, Las Vegas, NV 89145 [APN: 138-27-419-409];
  - All of Cornerstone Holdings I, LLC's rights, title, and interest in 3624 Berg Street, North Las Vegas, NV 89030 [APN: 139-12-210-036];
  - All of Cornerstone Holdings I, LLC's rights, title, and interest in 3170 Shadow Bluff Avenue, Las Vegas, NV 89120 [APN 162-36-511-025]; and
  - All of Cornerstone Holdings I, LLC's rights, title, and interest in 2110 Sealion Drive, Unit 206, Las Vegas, NV 89128 [APN: 138-21-613-307].
- The Trustee's avoidance and recovery rights and powers under chapter 5 of the Bankruptcy Code shall apply to transfers of property from the consolidated entities.
- The relief stated above is all granted *nunc pro tunc*, effective from the Commencement Date of November 6, 2024.

# # # # #

DATED: January 21, 2025      **ATKINSON LAW ASSOCIATES LTD.**

By: /s/ Robert Atkinson
ROBERT E. ATKINSON, ESQ.
Nevada Bar No. 9958
*Attorney for Trustee*